**GREENSPOON MARDER LLP**
Kelly M. Purcaro, Esq.
Kory Ann Ferro, Esq.
One Gateway Center, Suite 2600
Newark, New Jersey 07102
Tel.: (732) 456-8734 or 8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com
*Attorneys for Defendant Searchbug, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN, <br><br> *Plaintiff,* <br><br> v. <br><br> SEARCHBUG, INC., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities, <br><br> *Defendants.* | Case No.: 1:24-cv-05658-HB <br><br> Civil Action <br><br><br> **ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND DEMAND FOR JURY TRIAL** |

Defendant Searchbug, Inc. ("Searchbug"), by and through its undersigned

counsel, hereby timely responds to the Complaint filed by Plaintiffs, Atlas Data

Privacy Corporation, *as assignee of individuals who are Covered Persons*, Jane Doe-

1

1, *a law enforcement officer*, Jane Doe-2, *a law enforcement officer*, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan ("Plaintiffs"). The headings and Paragraph numbers below correspond to the Paragraphs contained in the Complaint.

## INTRODUCTION

1.     Searchbug denies that it is one of the alleged "uncooperative profit-seeking data brokers" as described in Paragraph 1 of the Complaint.

2.     Searchbug denies that it is one of the alleged companies that "choos[es] profit and personal gain over a critical public interest and the unequivocal mandate of the law" or that operates "without sufficient regard for the risks and consequences imposed upon individuals who serve critical judicial and law enforcement roles" as described in Paragraph 2 of the Complaint.

3.     Searchbug denies that it "wantonly and repeatedly disregard[s] the law" or "demonstrate[s] a callousness towards the well-being of those who serve" as described in Paragraph 3 of the Complaint.  Searchbug is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 3 of the Complaint and accordingly denies the allegations.

4.     Searchbug admits that Plaintiffs filed this action. Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint and accordingly denies the allegations.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

5.      Searchbug admits the allegations contained in Paragraph 5 of the Complaint.

6.      Searchbug admits the allegations contained in Paragraph 6 of the Complaint.

7.      Searchbug denies, to the extent the Complaint infers, that it provides the same kind of data broker services" as described in the allegations contained in Paragraph 7 of the Complaint. Searchbug condemns the actions by the gunman.

### New Jersey Passes Daniel's Law in 2020

8.      Searchbug admits that Daniel's Law is codified in *N.J.S.A.* 47:1a-1, *et seq.* and *N.J.S.A.* 56:9-166.1 and such statute speaks for itself and is the best evidence of its contents.  As to the remaining allegations contained in Paragraph 8 of the Complaint, Searchbug denies same to the extent they incorrectly state a conclusion of law.

9.      Searchbug admits that Daniel's Law is codified in *N.J.S.A.* 47:1a-1, *et seq.* and *N.J.S.A.* 56:9-166.1 and such statute speaks for itself and is the best evidence of its contents.  Searchbug denies the remaining allegations contained in Paragraph 9 of the Complaint to the extent they incorrectly state a conclusion of law.

**Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022**

10.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint.

11.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint.

12.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint.

**Violence Against Police Officers and Judges Has Not Stopped**

13.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint.

14.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint.

**THE PARTIES**

**The Individual Plaintiffs**

15.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint and accordingly leaves Plaintiffs to their proofs.

16.     Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint and accordingly leaves Plaintiffs to their proofs.

17.     Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint and accordingly leaves Plaintiffs to their proofs.

18.     Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint and accordingly leaves Plaintiffs to their proofs.

19.     Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint and accordingly leaves Plaintiffs to their proofs.

20.     Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint and accordingly leaves Plaintiffs to their proofs.

21.     Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint and accordingly leaves Plaintiffs to their proofs.

22.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint and accordingly leaves Plaintiffs to their proofs.

23.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint and accordingly leaves Plaintiffs to their proofs.

24.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 of the Complaint and accordingly leaves Plaintiffs to their proofs.

**Plaintiff Atlas and its Assignors**

25.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 of the Complaint and accordingly leaves Plaintiffs to their proofs.

26.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Complaint and accordingly denies the allegations.

27.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the Complaint and accordingly denies the allegations.

28.    Searchbug denies receipt of the "written notice(s)" described in Paragraph 28 of the Complaint. Searchbug is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 28 of the Complaint and accordingly denies the allegations.

29.    Searchbug denies the allegations contained in Paragraph 29 of the Complaint.

30.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 of the Complaint and accordingly denies the allegations.

31.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 of the Complaint and accordingly denies the allegations.

32.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Complaint and accordingly denies the allegations.

33.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint and accordingly denies the allegations.

34.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 of the Complaint and accordingly denies the allegations.

35.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 of the Complaint and accordingly denies the allegations.

36.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 of the Complaint and accordingly denies the allegations.

**<u>Defendants</u>**

37.    Searchbug denies the allegations contained in Paragraph 37 of the Complaint.

38.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 of the Complaint as it references unidentified "Richard Roe" individuals and "ABC Companies."  To the extent Paragraph 38 contends that employees of Searchbug were engaged in any wrongdoing, Searchbug denies same.

39.    Searchbug is an investigator of public records engaging primarily in business-to-business telecommunications verification and some data scrubbing. Searchbug does so, in part, through searchbug.com.  Searchbug does not store,

manage, or administer any of its own data. Searchbug denies the remaining allegations contained in Paragraph 39 of the Complaint and accordingly leaves Plaintiffs to their proofs.

40.     Searchbug admits that customers, who are verified both with a code sent to a valid phone number and through the merchant system to validate their credit card, may purchase products and services offered by Searchbug if the potential customers then passes the screen process. Qualified and verified customers may then access Searchbug's services such as background checks, people and property searches, phone number verification, and bulk file processing for businesses. Searchbug denies the remaining allegations contained in Paragraph 40 of the Complaint.

41.     Searchbug admits that properly qualified and verified customers may may purchase products and services offered by Searchbug such as background checks, people and property searches, phone number verification, and bulk file processing for businesses. Searchbug denies the remaining allegations contained in Paragraph 41 of the Complaint.

42.     Searchbug denies that the characterizations of services alleged in Paragraph 42 of the Complaint apply to Searchbug and further denies that Searchbug "disclose[s]" information "without sufficient regard to the risks and consequences imposed on individuals." Searchbug is without knowledge or information sufficient

to form a belief as to the truth of the remaining allegations contained in Paragraph 42 of the Complaint and accordingly leaves Plaintiffs to their proofs.

## JURISDICTION AND VENUE

43.    Paragraph 43 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, Searchbug denies that state court, where the Complaint was filed, had jurisdiction, which is why the matter was properly removed to federal court.

44.    Paragraph 44 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, Searchbug denies the allegations in Paragraph 44 of the Complaint as venue in Middlesex County was not proper resulting in the removal of this matter from state court to federal court.

## FACTS COMMON TO ALL COUNTS

45.    Paragraph 45 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, Searchbug admits that Daniel's Law is codified in *N.J.S.A.* 47:1a-1, *et seq.* and *N.J.S.A.* 56:9-166.1.

46.    Paragraph 46 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a

response is required, Searchbug denies the allegations contained in Paragraph 46 of the Complaint to the extent they incorrectly state a conclusion of law.

47.    Paragraph 47 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, Searchbug denies the allegations contained in Paragraph 47 of the Complaint to the extent they incorrectly state a conclusion of law.

48.    Paragraph 48 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, Searchbug denies the allegations contained in Paragraph 48 of the Complaint to the extent they incorrectly state a conclusion of law.

49.    Paragraph 49 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, Searchbug denies the allegations contained in Paragraph 49 of the Complaint to the extent they incorrectly state a conclusion of law.

50.    Paragraph 50 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required. To the extent a response is required, Searchbug denies the allegations contained in Paragraph 50 of the Complaint to the extent they incorrectly state a conclusion of law.

51.    Paragraph 51 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a

response is required, Searchbug denies the allegations contained in Paragraph 51 of the Complaint to the extent they incorrectly state a conclusion of law.

52.    Searchbug denies the allegations contained in Paragraph 52 of the Complaint.

53.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53 of the Complaint and accordingly denies the allegations.

54.    Searchbug denies the allegations contained in Paragraph 54 of the Complaint.

55.    Searchbug denies the allegations contained in Paragraph 55 of the Complaint.

56.    Searchbug is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56 of the Complaint and accordingly denies the allegations.

57.    Searchbug denies the allegations contained in Paragraph 57 of the Complaint.

## COUNT ONE
**(Daniel's Law)**

58.    Searchbug repeats, realleges, and incorporates by reference each of the preceding paragraphs of this Answer as if fully set forth herein.

59.    Searchbug denies the allegations contained in Paragraph 59 of the Complaint.

60.    Paragraph 60 of the Complaint constitutes legal conclusions, statements, and characterizations to which no response is required.  To the extent a response is required, Searchbug denies the allegations contained in Paragraph 60 of the Complaint to the extent they incorrectly state a conclusion of law.

61.    Searchbug denies the allegations contained in Paragraph 61 of the Complaint.

62.    Searchbug denies the allegations contained in Paragraph 62 of the Complaint.

63.    Searchbug denies the allegations contained in Paragraph 63 of the Complaint.

64.    Searchbug denies the allegations contained in Paragraph 64 of the Complaint.

**WHEREFORE**, Searchbug demands judgment against Plaintiffs dismissing their Complaint with prejudice, awarding Searchbug attorneys' fees and costs and granting such other and further relief as the Court deems just and proper.

As to any part of the Complaint not specifically admitted, denied, or discussed with respect to Searchbug, Searchbug hereby denies said allegations, including, but not limited to, any allegations contained in the Complaint's preamble, headings,

subheadings, and wherefore clauses.  Furthermore, any averments in the Complaint to which no responsive pleadings are capable or required shall be deemed denied.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof where it otherwise rests with Plaintiffs, Searchbug pleads the following affirmative defenses to Plaintiffs' Complaint:

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, for failure to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable Statute of Limitations.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs lack standing to bring this action as Plaintiffs have not suffered the requisite harm required to confer standing under Article III of the United States Constitution.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs' lack standing to bring the claims by way of assignment and/or as noncovered persons.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because any alleged wrongdoing by Searchbug, which Searchbug denies, was caused by mistake. Indeed, Searchbug acted reasonably and in good faith at all material times based on all relevant facts and circumstances known by it at the time it acted.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of waiver.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the subject alleged speech constitute commercial speech protected by the First Amendment of the United States Constitution and the imposition of liability for such protected speech violates the First Amendment rights of the speaker.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of unclean hands.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs failed to mitigate their damages. While Searchbug does not concede that it has violated Daniel's Law or that Plaintiffs sustained damages, recovery (if any) should be reduced in proportion to Plaintiffs' failure to mitigate such damages.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Plaintiffs seek impermissible liquidated damages.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the alleged requests were sent for an improper purpose, and in an effort to manufacture and pursue litigation on a massive group action basis, not to seek compensation for damages suffered, as contemplated by statute.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of unjust enrichment.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the alleged damages Plaintiffs seek were caused in whole or in part by the acts or omissions or intervening and superseding acts of negligence or intentional conduct

on the part of persons or entities over whom Searchbug has neither control nor right of control and for whose actions Searchbug is not liable.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because the statutory damages provisions of the law are excessive fines and/or are grossly disproportionate to any actual harm that may have been suffered. Accordingly, such statutory damages provisions violate the United States Constitution.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the Communications Decency Act.  *See* 47 U.S.C. § 230 *et seq.*

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited as violative of the United States Constitution as applied to Searchbug.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for injunctive relief fail or otherwise are barred, in whole or in part, or are limited because there is neither continuing harm nor immediate danger.

## NINETEENTH AFIRMATIVE DEFENSE

Searchbug did not owe a duty to Plaintiffs.

## TWENTIETH AFFIRMATIVE DEFENSE

Searchbug did not breach any legal duty owed to Plaintiffs.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

Searchbug was not the actual or proximate cause of the damages claimed by Plaintiffs.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

The claims against Searchbug are barred by the doctrines of comparative and/or contributory negligence.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

Public policy prohibits recovery by Plaintiffs against Searchbug.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' allegations are barred by the common law doctrine of impossibility of performance.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited because Atlas failed to provide full and complete information to their users regarding Searchbug and its services during the opt-out and/or assignment process resulting in improper opt-out requests based on misinformation and incomplete information and/or invalid assignments.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims of punitive damages fail or otherwise are barred, in whole or in part, or are limited because Searchbug did not engage in any acts or omissions

actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. In addition, the award of such damages would violate Searchbug's rights under the Constitutions of the State of New Jersey and the United States of America.

### TWENTY-SEVENTY AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, or are limited by the doctrine of laches.

### RESERVATION OF RIGHTS

Searchbug reserves the right to amend or add to its affirmative defenses upon discovery of additional information or evidence or as justice so requires.

**WHEREFORE**, Searchbug demands judgment against Plaintiffs dismissing their Complaint with prejudice, awarding Searchbug attorneys' fees and costs and granting such other and further relief as the Court deems just and proper.

### COUNTERCLAIMS

Defendant/Counterclaimant Searchbug, Inc. ("Searchbug"), by and through its undersigned counsel, hereby complains by way of Counterclaim against Plaintiffs/Counterclaim-Defendants, Atlas Data Privacy Corporation, *as assignee of individuals who are Covered Persons*, Jane Doe-1, *a law enforcement officer*, Jane Doe-2, *a law enforcement officer*, Edwin Maldonado, Scott Maloney, Justyna

Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan ("Plaintiffs"), as follows:

## PARTIES

1.     Defendant/Counterclaimant Searchbug is a California based investigator of public records engaging primarily in business-to-business telecommunications verification and some data scrubbing.    Searchbug's headquarters are located at 2101 Las Palmas Drive, Suite E, Carlsbad, CA 92011. Searchbug provides services via interstate computer services and does not have any offices or locations within the State of New Jersey.

2.     Upon information and belief, Plaintiff Atlas Data Privacy Corporation ("Atlas") is a Delaware corporation organized under the laws of the State of Delaware with its offices located at 201 Montgomery Street, Suite 263, Jersey City, New Jersey.

3.     Upon information and belief, Jane Doe-1, *a law enforcement officer*, is or was a police officer working in Northern New Jersey.

4.     Upon information and belief, Jane Doe-2, *a law enforcement officer*, is or was a correctional police officer who lives in Northern New Jersey.

5.     Upon information and belief, Edwin Maldonado is or was a Detective with Plainfield, New Jersey's major crime unit and a Federal task force.

6.     Upon information and belief, Scott Maloney is or was a police officer

in the Rahway, New Jersey Police Department.

7.    Upon information and belief, Justyna Maloney is or was a police officer in the Rahway, New Jersey Police Department.

8.    Upon information and belief, Plaintiff Patrick Colligan is or was a police Detective for the police department of Franklin Township in Somerset, New Jersey.

9.    Upon information and belief, Plaintiff Peter Andreyev is or was a police officer for the police department of Point Pleasant in Ocean County, New Jersey.

10.    Upon information and belief, William Sullivan is or was a correctional police officer with the New Jersey Department of Corrections.

## JURISDICTION AND VENUE

11.    Jurisdiction of this Court is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1), as Searchbug is a citizen of a state different from Plaintiffs and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.    Venue is proper in this judicial district pursuant to the assignment of this case to this Court.

## FACTUAL BACKGROUND

13.    Atlas leveraged the amendments to Daniel's Law to improperly create a cottage industry for itself, whereby it designed a process upon which it could

recruit "covered persons," sabotage hundreds of businesses, and profit off the legal claims of those very "covered persons" at the expenses of unsuspecting companies.

14.    Atlas sought out and signed up thousands of alleged covered persons (the "Assignors"), asked that they assign their legal rights to Atlas, provided the Assignors with a preset list of target companies, and created "nondisclosure requests" on behalf of the Assignors.

15.    The "nondisclosure requests" created by Atlas were generic, autogenerated emails completely devoid of the individual information of the Assignors, which would be needed to, among other things, confirm that the tens of thousands of requests were *bona fide* requests, made on behalf of actual Covered Persons as defined by Daniel's Law, or even authorized by the Assignors, or if the information provided was in fact "the home address or unpublished home telephone number" of any actual Covered Person (herein "Protected Information").

16.    Indeed, the requests were created and sent by Atlas, and not by the Assignors, as required by Daniel's Law.

17.    Atlas collected Assignors for about six months until it reached nearly 20,000 – all the while withholding such Assignors purported nondisclosure requests until Atlas acquired its critical mass needed to launch its attack.

18.     To be sure, if Atlas were truly concerned about the safety of the Assignors, they would have generated opt-out requests immediately upon an Assignor signing up for services, not months later.

19.     Atlas failed to verify that the Assignors qualified as Covered Persons under Daniel's Law.

20.     Atlas failed to verify that the targeted defendants, including Searchbug, possessed or disclosed Protected Information of the Assignors.

21.     Atlas failed to advise the Assignors of Searchbug's business, terms of use, privacy practices, or any other material facts about Searchbug.

22.     For example, Atlas failed to advise or otherwise ignored that Searchbug takes great pride in doing its best to ensure it knows its customers and has several checkpoints including IP address checks, disposable email domains, invalid phone numbers, and other cross checks to help thwart bad actors.

23.     Not everyone that tries to create an account is authorized or able to use Searchbug just because they signed up. If part of the information provided doesn't pass Searchbug's screening process, is incomplete, or not validated properly, the account is marked as potential fraud or dropped as unresponsive when questioned about their data input regarding their information to conform with compliance.

24.     Notwithstanding Searchbug's commitment to privacy protections and compliance with all appliable laws, once Atlas reached its critical mass of Assignors,

according to Plaintiffs' Complaint and Atlas' subsequent productions, Atlas sent tens of thousands of emails nearly simultaneously, all from "@atlasmail.com" to "support@searchbug.com" rather than use Searchbug's already preexisting opt-out platform or its correct opt-out email address – "support@searchbug.zohodesk.com," which email automatically generates support tickets for opt-out submissions so they can be processed by Searchbug's team.

25.    In fact, beginning in December of 2022, Searchbug had previously received approximately eleven emails from "@atlasmail.com" to Searchbug's correct opt-out email, "support@searchbug.zohodesk.com," labeled with a subject line "Removal Request for Personal Data." Searchbug processed and responded to all such requests by blocking information of those individuals who could be successfully identified and referring those who could not be properly identified to Searchbug's pre-existing opt-out platform in order to facilitate their identification and the processing of their request.  Once a requestor utilized the platform to verify their identity, Searchbug was able to process their request and block their information accordingly.

26.    In January 2023, Searchbug received approximately seven emails from "@atlasmail.com" to Searchbug's correct opt-out email, "support@searchbug.zohodesk.com," labeled with a subject line "CCPA/CRPA Takedown Request." Due to difficulty in properly identifying the individuals from

the information sent in the emails, Searchbug referred the requestors to Searchbug's pre-existing opt-out platform in order to facilitate their identification and the processing of their request.  Again, once a requestor utilized the platform to verify their identity, Searchbug was able to process their request and block their information accordingly.

27.    However, despite having previously successfully used the correct email of "support@searchbug.zohodesk.com," about a year later in January of 2024, according to the Complaint, Atlas chose to send its massive, coordinated spam to a different email address – "support@searchbug.com," which was an old, unmonitored, defunct email address that was incapable of creating support tickets for opt-out submissions.

28.    Moreover, Searchbug had and has a preexisting opt-out process, whereby opt out requests can and could have been easily processed through the available platform on Searchbug's website (https://www.searchbug.com/contact-us.aspx) regardless of an individual's Covered Person status.  As such, in launching its attack, Atlas actively ignored a pre-established, user friendly opt-out platform that would have immediately removed the Assignors' data regardless of the verification of their status as a Covered Person under Daniel's Law.

29.    Searchbug's correct contact email address, opt-out request forms, and policies for blocking information from showing up on reports are easily found on

numerous channels, including the California Attorney General's website. Atlas ignored these methods in 2024, even though they had previously sent other email requests for opt-outs through proper channels in 2022- 2023, which were addressed.

30. The Complaint[1] alleges that "each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas)" sent nondisclosure request via email to Searchbug from "AtlasMail" starting on or about January 6, 2024. Complaint at ¶ 52.

31. Searchbug denies that the individual plaintiffs and all of the Assignors sent nondisclosure requests.

32. Searchbug denies that the requests were valid, denies that the assignments were valid, and denies that the Assignors all qualify as Covered Persons under Daniel's Law.

33. The volume of emails blasted by Atlas triggered automated security protocols within Searchbug's email provider. Consequently, these messages were automatically routed to the Spam folder of the support@searchbug.com account, as they were flagged as unsolicited, irrelevant, or potentially dangerous.

---

[1] February 8, 2024, Plaintiffs filed the underlying complaint against Searchbug in the New Jersey State Court, Law Division, Middlesex County (State Dkt. MID-L-000904-24) (the "Complaint"). On April 26, 2024, Searchbug filed a Notice of Removal of Plaintiffs' Complaint before this Court (Dkt. No. 1), which removal was unopposed and thereafter granted by this Court.

34.    Upon discovery and review of the bulk emails in the Spam folder, the following technical facts led to the classification of the message flood as automated, illegitimate spam:

a. Identical Content: All emails shared the exact same subject line and body content (with the exception of minimal personalized details).

b. Single Domain and Sender: The messages originated from the same sending domain (atlasmail.com) and were routed through a service, mxb.mailgun.org, known for high-volume batch sending.

c. "Catch-All" Email Addresses: A verification check of the sender addresses using an external verification service identified them as "catch-all" addresses. This designation indicates the email accounts do not exist as standard inboxes, and are designed not to bounce, a common characteristic of automated spam campaigns.

35.    Searchbug has established automated solutions to accommodate bulk opt-out or data removal requests from data removal services and similar organizations. These services typically contact Searchbug directly to submit a large, one-time list or to arrange for ongoing, batch-processing data removal.

36.    Individual opt-out requests, on the other hand, are typically sent directly by consumers from their personal email accounts. The circumstances surrounding the Atlas emails—high volume, automation markers, and technical routing to

spam—did not align with standard protocols for processing individual or legitimate high-volume data removal requests.

37.    Searchbug does not collect, store, manage, or administrate information about anyone.  Searchbug does not have a database of information.  Rather, it provides its customers' access to databases owned and operated by other vendors whose data is accessed through an API (Application Programming Interface) when a user enters requested information.  Searchbug is a data facilitator.

38.    Based upon Searchbug's business model, it is unable to remove information from its own database because it has no database.  Instead, Searchbug can only block specific information from being found and subsequently shown on customer-requested reports. Thus, Searchbug undertook a complex project, whereby a custom script was created to block the requested covered person information upon receipt of the covered person removal request. After which an automated reply is sent back to the same email address confirming the process of blocking the requested records has been completed. Searchbug monitors the auto responses to ensure any replies or updates are also processed.

39.    Searchbug's reply emails to "@atlas.com" emails have been marked as delivered. They have been marked as delivered, but not a single one has been opened or read, which further evidences that the Atlas emails are catch-all alias emails that are not monitored by the actual individual who claimed to send them.

28

40.    Searchbug's acted reasonably and in good faith to handle the massive incursion of requests, which prompt and thorough response required Searchbug to dedicate substantial resources away from revenue-generating projects.  Same would have easily been avoided had Atlas used Searchbug's existing process or had Atlas simply reached out to Searchbug prior to spamming them.  Searchbug would have gladly worked with Atlas to find a mutually beneficial solution as it has done with other companies in the opt-out space.  Atlas' litigation-creation tactics created unnecessary (and intentional on the part of Atlas) delays and forced Searchbug to create and implement an entirely new process for Atlas.

41.    Searchbug also created an email address strictly for covered persons (coveredperson@searchbug.com) so anyone covered by Daniel's Law could remit requests there, although the opt-out platform is still the most efficient manner to process opt-out requests.

42.    Notably, on June 6, 2024, in response to Atlas' representation on the record before this Court that it was happy to receive information regarding how to process future requests, counsel advised Atlas that Searchbug's opt-out platform should be utilized.  However, Atlas continued to send emails, including to the defunct support@searchbug.com email.

43.    Then, on October 17, 2024, counsel advised Atlas that the support@searchbug.com email was a defunct address that was not utilized and

provided the coveredperson@searchbug.com email address. Searchbug also, since it was clear Atlas refused to utilize the opt-out platform, requested that Atlas work with Searchbug to implement an API to allow Atlas to seamlessly transmit takedown requests and receive real-time confirmation of processing. Atlas never responded thereby further confirming Atlas has no desire or intent to streamline or facilitate compliance, but only to frustrate businesses and manufacture claims.

44.    On April 18, 2024[2] and June 17, 2025 (Dkt. No. 51), the Court ordered Atlas to produce lists of the Assignors (herein a "List" or the "Lists").

45.    Based upon the Lists, it is clear Atlas sent its spam attack of tens of thousands of nearly identical emails from the same unknown handle to Searchbug with the purpose and intention of frustrating Daniel's Law's ten-day compliance period.

46.    The Lists show that Atlas, indeed, sent multiple separate emails on behalf of the same Assignors (e.g., one email for an address, one email for a phone number, one email for an alternate phone number) to generate an even higher volume of emails in its calculated cyber-attack against Searchbug, in an effort to create multiple claims per Assignor and to further exacerbate the damage to Searchbug's computer systems and business. In some instances, upwards of five separate email

---

[2] This Order was not entered in Searchbug's case as Searchbug was not removed until after its entry, but Atlas nonetheless sent the ordered list subsequent to Searchbug's removal.

requests were generated by Atlas for a single Assignor.

47.    To be sure, as Ordered by this Court, Plaintiffs first provided a List of some 48,302 alleged non-disclosure requests emails.

48.    Then in response to a second Order of this Court, Plaintiffs an additional List purporting to provide Searchbug with "A 'Covered Persons list', which includes, for both individuals plaintiffs and the 'Covered Persons' (as defined in the Complaint), the dates the [alleged 48,294] takedown notices were [supposedly] delivered to defendants and the 'category' of covered person into which each person fits."

49.    As demonstrated by the Lists, it appears that some 48,302 – 48,294 separate emails were sent – allegedly on behalf of about 19,000 Assignors. Many of these alleged requests are duplicates, list different addresses and different phone numbers for the same Assignor, and otherwise appear to have separate requests for information for the same Assignor.

50.    The Lists allege that Atlas sent these approximately 48,000 emails to Searchbug in a calculated, nearly simultaneous, and massive fashion following the 2024 New Years Holiday, *i.e.*, about 7,000 emails per day continuously from January 6-13, 2024.

51.    Atlas created and designed this computer-based attack upon Searchbug, flooding Searchbug's system and servers with tens of thousands of emails, in an attempt to manufacture claims for the Assignors, and profit for Atlas.

52.    Searchbug wanted to ensure it had complied with all requests since the original Atlas attack had been designated as spam.  As such, Searchbug sought to utilize Atlas' Lists to cross-check for compliance.

53.    Unfortunately, Atlas purposefully made the Lists unmanageable and difficult to work with as, for example, they were not searchable nor editable, listed numerous line items for each Assignor, and could not be easily imported into a compliance platform.  Atlas sent the Lists to further frustrate compliance efforts since Searchbug manually looking up, locating, and blocking over 48,000 locked, unsearchable, and duplicative line items could take Searchbug 600-800 person-hours, which would be 4-5 months of full-time effort.

54.    Due to the impossibility of manually processing the Lists, Searchbug again had to build a customized system that imported the data, encrypted it, and then blocked each piece of data from displaying in a report if requested by anyone. This new system required dedicated resources and over 100 person-hours to create, test, and secure a process whereby the data points provided were blocked from search requests in Searchbug's system.

55.    Again, Atlas could have, and should have, utilized Searchbug's pre-existing opt-out platform, which would have automatically processed all takedown requests immediately.  Instead, Atlas chose to utilize a targeted spam attack to a defunct email (knowing the correct email and opt-opt platform from prior interactions), which was segregated as spam and some of which may not have ever been received by Searchbug, followed by the provision of an unwieldy and purposefully unhelpful Lists.  Thus making clear Atlas' intent to prevent compliance in an effort to manufacture claims.

56.    Searchbug's computer-based technology, and its computers/systems, are used in interstate and foreign commerce and/or communications.

57.    To become a customer of Searchbug and gain access to Searchbug's services and computer platform, customers must pass pre-screening, register and are verified both with a code sent to a valid phone number and through a merchant validating system.[3]

58.    To access Searchbug's goods and services, customers must also agree to Searchbug's Terms and Conditions, which provide, amongst other things, that the Customer is being granted a "restricted" use.  The Customer agrees not to use

---

[3] Even the one free search provided to individuals who want to search for their own record and opt-out the record found is only provided to customers. Registration and agreement to the terms and conditions, verification, and a valid credit card must be provided in order to become a customer and then conduct the one free search.

Searchbug's services or information "to bother, stalk, harass, threaten or embarrass any individual" and the Customer agrees not to use the services to look up "government officials" or "public persons." The Customer agrees that they may not "resell or broker the Searchbug services to any third party" and to indemnify Searchbug.

59.    The Complaint alleges that Atlas brings claims against Searchbug "as assignee of the claims of approximately 19,522 individuals." Complaint at ¶ 26.

60.    The Complaint alleges Searchbug violated Daniel's Law without advising how Searchbug purportedly violated same or providing any example of such alleged violation. *See id.* at ¶¶ 54-55.

61.    Atlas is not a customer of Searchbug and as such, are not authorized to access Searchbug's computer systems, platform, or data.

62.    Atlas's only way to access Searchbug data would be by hacking into the system, fraudulent access through the creation of a fake account, and/or unauthorized access through some third party posing as a Searchbug customer.

63.    Atlas's unauthorized access to Searchbug's computer systems and data was accomplished by improper means and a plan with at least one other unknown actor to fraudulently, purposefully, and knowingly harm Searchbug.

64.    Searchbug did not consent to or otherwise have knowledge of Atlas's unauthorized access.

65.    Atlas's unauthorized access to Searchbug's computer systems and data caused harm to Searchbug and damage to its business by, among other things, necessitating expenditures of costs and resources in the creation of multiple new processes to deal with the massive influx of Atlas email spams, diverting over 100 hours of developers' time, as well as customer service time, causing business services interruption and delays in services, and otherwise harming this small business and its ability to continue operating.

66.    As a direct result of Plaintiffs' actions, Searchbug suffered harm including, but not limited to, its computer systems, its email system, its business, and other damages related to same.

### COUNT I
### Violations of New Jersey Computer Related Offenses Act
### *N.J.S.A.* § 2A:38A-3 ("NJCROA")

67.    Searchbug repeats and realleges Paragraphs 1-66 of its Counterclaims as if fully set forth herein.

68.    Atlas's purposely and/or knowingly accessed Searchbug's computer, computer system, or network without authorization or in excess of authorization as detailed above, *e.g.*, by way of the massive email spam attack and/or by way of unauthorized access through improper means.

69.    Atlas purposely and/or knowingly accessed, altered, damaged, took and/or destroyed Searchbug data and/or systems without authorization.

70.     Searchbug was damaged in business and/or property as a result of the unauthorized access and related misconduct of Atlas, damage to its business by, among other things, necessitating expenditures of costs and resources in the creation of multiple new processes to deal with the massive influx of Atlas email spams, diverting over 100 hours of developers' time, as well as customer service time, causing business services interruption and delays in services, and otherwise harming this small business and its ability to continue operating.

71.     Atlas acted purposefully and/or knowingly in their unauthorized actions.

72.     Atlas's unauthorized access to Searchbug's computer and subsequent improper use of Searchbug's data violated Searchbug's Terms and Conditions giving rise to an indemnification obligation.

73.     As a result, Searchbug is entitled to and demands civil remedies for Atlas's violations of the NJCROA, including, but not limited to, injunctive relief, compensatory damages, statutory damages, punitive damages, indemnification, attorney's fees and costs, pre and post judgment interest, and all other relief as the Court deems proper and just.

## COUNT II
### Tortious Interference

74.     Searchbug repeats and realleges Paragraphs 1-73 of its Counterclaims as if fully set forth herein.

36

75.    Searchbug has a reasonable expectation of economic advantage and valid, protectable interest in protecting its economic relationship with its current customers and prospective customers.

76.    Searchbug has business and contractual relationships with its customers.

77.    Atlas knew of Searchbug's economic relationships and reasonable expectation of economic advantage with its customers and prospective customers.

78.    Atlas purposely, intentionally, and maliciously interfered with Searchbug's economic relationships and reasonable expectation of economic advantage with its customers and prospective customers, without justification, by way of the massive, coordinated spam attack of tens of thousands of emails to Searchbug and/or by way of unauthorized access through improper means.

79.    Atlas's actions in this regard inhibited Searchbug's ability to service their customers and potential customers and caused massive disruption to services.

80.    As a result of Atlas's actions and interference, Searchbug has suffered and continues to suffer losses and damages, the full amount of which shall be proven at trial.

81.    As a result, Searchbug is entitled to and demands civil remedies for Atlas's Tortious Interference with current and perspective business advantage, including, but not limited to, injunctive relief, compensatory damages, punitive

damages, attorney's fees and costs, pre and post judgment interest, and all other relief as the Court deems proper and just.

## **COUNT III**
### **Civil Conspiracy**

82.     Searchbug repeats and realleges Paragraphs 1-81 of its Counterclaims as if fully set forth herein.

83.     Atlas and/or one or more entities or individuals jointly, individually, and/or through someone acting on their behalf, conspired and agreed to unlawfully access Searchbug's computers, platform, and/or data and to take, harm, or otherwise use such unlawfully obtained information.

84.     Atlas and/or one or more entities or individuals jointly, individually, and/or through someone acting on their behalf, took overt steps to effectuate such plan and did in fact unlawfully gain access Searchbug's computers, platform, and/or data.

85.     Atlas and/or one or more entities or individuals jointly, individually, and/or through someone acting on their behalf, took additional overt steps and gained access to and took data from Searchbug's computers, platform, and/or data.

86.     This unauthorized access to Searchbug's computer and subsequent improper use of Searchbug's data violated Searchbug's Terms and Conditions giving rise to an indemnification obligation.

87.    The actions of Atlas and/or one or more entities or individuals jointly, individually, and/or through someone acting on their behalf, damaged and was the proximate cause of damage to Searchbug.

88.    Atlas and/or one or more entities or individuals jointly, individually, and/or through someone acting on their behalf, conspired and agreed to unlawfully violate Searchbug's Terms and Conditions.

89.    Atlas and/or one or more entities or individuals jointly, individually, and/or through someone acting on their behalf, took overt steps to effectuate such plan and did in fact violated Searchbug's Terms and Conditions.

90.    The actions of Atlas and/or one or more entities or individuals jointly, individually, and/or through someone acting on their behalf, damaged and was the proximate cause of damage to Searchbug.

91.    As a result, Searchbug is entitled to and demands judgement against Atlas and its co-conspirator(s) for Civil Conspiracy, including, but not limited to, injunctive relief, compensatory damages, punitive damages, indemnification, attorney's fees and costs, pre and post judgment interest, and all other relief as the Court deems proper and just.

## **Prayer for Relief**

Wherefore, Searchbug prays for relief to the extent and as permitted by law, as follows:

A.   For judgment against Plaintiffs, and in favor of Searchbug, on each of

Searchbug's Counterclaims I – III;

B.   Statutory damages;

C.   Injunctive relief;

D.   Compensatory damages;

E.   Actual damages;

F.   Punitive Damages;

G.   Indemnification;

H.   Attorney's fees and costs;

I.   Pre- and Post-Judgement interest; and

J.   Such other relief as the Court deems proper and just.

## **DEMAND FOR JURY TRIAL**

Searchbug hereby demands a trial by jury on all issues as provided by *Fed.*

*R. Civ. P.* 38(b) and *L. Civ. R.* 38.1.


DATED: October 3, 2025                    Respectfully submitted,

**GREENSPOON MARDER LLP**
*Attorneys for Defendant*
*The Searchbug Group, L.L.C.*


*/s/ Kelly M. Purcaro*
Kelly M. Purcaro, Esq.

40

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 3, 2025, I filed a true and correct copy of the foregoing with the court and a copy will be served upon all parties of record via CM/ECF.

<u>*/s/ Kelly M. Purcaro*</u>
Kelly M. Purcaro, Esq.