# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

ATLAS DATA PRIVACY CORPORATION, *et al.*,

        *Plaintiffs,*

v.

SEARCHBUG, INC., *et al.*,

        *Defendants.*

Case No.: 1:24-cv-05658-HB

Civil Action

---

## SEARCHBUG, INC.'S OPPOSITION TO PLAINTIFFS' 12(b)(6) MOTION TO DISMISS COUNTERCLAIMS

---

**GREENSPOON MARDER LLP**
Kelly M. Purcaro, Esq.
Kory Ann Ferro, Esq.
One Gateway Center, Suite 2600
Newark, New Jersey 07102
Tel.: (732) 456-8734 or 8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendant Searchbug*

## **<u>TABLE OF CONTENTS</u>**

**<u>Page(s)</u>**

I.   PRELIMINARY STATEMENT ...........................................................................1

II.   STATEMENT OF FACTS ..............................................................................2

    A.  Searchbug's Business Model and Compliance Framework.........................2

    B.  Atlas' Recruitment, Assignments, and Auto Generated Requests ...............2

    C.  Searchbug's Existing Opt-Out Channels, Atlas' Deliberate End Run ..........3

    D.  The January 2024 High Volume Email Barrage ...........................................5

    E.  Operational Disruption and Mitigation Efforts.............................................6

    F.  Searchbug's Good Faith Outreach, Atlas Refusal to Cooperate ..................6

    G.  Lack of Authorization and Resulting Harm .................................................7

III.   LEGAL STANDARD .....................................................................................7

IV.   LEGAL ARGUMENT.....................................................................................8

    A.  Searchbug Sufficiently Pled a Claim for relief under CROA......................8

        1.  Searchbug Adequately Alleges the First CROA Element........................9

        2.  Searchbug Adequately Alleges the Second CROA Element .................11

        3.  Atlas is Wrong on the Law and the Facts for CROA ...........................12

    B.  Searchbug Sufficiently Pled a Claim for Tortious Interference.................13

        1.  Reasonable Expectation of Economic Benefit Plausibly Pled .............14

        2.  Malicious Interference by Atlas is Sufficiently Pled ...........................15

        3.  Resulting Losses is Plausibly Pled.......................................................16

    C.  Searchbug Sufficiently Pled a Claim for Relief for Civil Conspiracy........17

V.   CONCLUSION .............................................................................................19

i

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>Cases</u>

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................7

*Austar Int'l Ltd. v. AustarPharma LLC*,
    425 F. Supp. 3d 336 (D.N.J. 2019) ......................................16

*Auto. Res. Mgmt. LLC v. Favo*,
    No. CV 21-2630 (SRC), 2022 WL 1080991 (D.N.J. Apr. 11, 2022)...................8

*Avaya Inc., RP v. Telecom Labs, Inc.*,
    838 F.3d 354 (3d Cir. 2016) .................................... 13, 15, 16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................7

*Craftmatic Sec. Litig. v. Kraftsow*,
    890 F.2d 628 (3d Cir. 1989) ..............................................8

*Dello Russo v. Nagel*,
    358 N.J. Super. 254 (App. Div. 2003)..............................15

*Ewing v. Cumberland Cnty.*,
    152 F. Supp. 3d 269 (D.N.J. 2015) ..................................18

*Fairway Dodge, L.L.C. v. Decker Dodge, Inc.*,
    191 N.J. 460 (2007) .............................................................8

*Farris v. Cnty. of Camden*,
    61 F. Supp. 2d 307 (D.N.J. 1999) ....................................18

*Ferring Pharms. Inc. v. Watson Pharms., Inc.*,
    No. 2:12-CV-05824 (WJM), 2014 WL 12634303 (D.N.J. Aug. 4, 2014) ............8

*Fineman v. Armstrong World Indus.*,
    980 F.2d 171 (3d Cir. 1992) ...................................... 13, 14

ii

*Freeman v. Giuliani,*
  No. CV 21-3354 (BAH), 2022 WL 16551323 (D.D.C. Oct. 31, 2022) .............18

*Gross v. Coloplast Corp.,*
  434 F. Supp. 3d 245 (E.D. Pa. 2020) ....................................................................8

*Heartland Payment Sys., LLC v. Carr,*
  No. 318CV09764BRMDEA, 2021 WL 302918 (D.N.J. Jan. 29, 2021) .............14

*Hillsborough Rare Coins, LLC v. ADT LLC,*
  No. CV 16-916 (MLC), 2017 WL 1731695 (D.N.J. May 2, 2017).....................17

*Industria De Alimentos Zenu S.A.S. v. Latinfood U.S. Corp.,*
  679 F. Supp. 3d 53 (D.N.J. 2023) .......................................................................15

*Lamorte Burns & Co. v. Walters,*
  167 N.J. 285 (2001) ............................................................................. 14, 15, 16

*MaxLite, Inc. v. ATG Elecs., Inc.,*
  193 F. Supp. 3d 371 (D.N.J. 2016) .....................................................................17

*MaxLite, Inc. v. ATG Elecs., Inc.,*
  No. CV 15-01116, 2024 WL 4764685 (D.N.J. Nov. 13, 2024) ..........................18

*New Jersey Carpenters & the Trs. Thereof v. Tishman Const. Corp of New Jersey,*
  760 F.3d 297 (3d Cir. 2014) .................................................................................7

*P.C. of Yonkers, Inc. v. Celebrations!,*
  No. 04-4554, 2007 WL 708978 (D.N.J. Mar. 5, 2007).........................................8

*Philip Morris USA, Inc. v. Lee,*
  481 F. Supp. 2d 742 (W.D. Tex. 2006) ...............................................................18

*Phillips v. County of Allegheny,*
  515 F.3d 224 (3d Cir. 2008) .................................................................................7

*Printing Mart-Morristown v. Sharp Electronics Corp.,*
  116. N.J. 739 (1989)........................................................................ 13, 14, 15, 17

*Velop, Inc. v. Kaplan*,
   301 N.J. Super. 32 (App. Div. 1997)......................................................................16

## Statutes

N.J.S.A. 2A:38A-1.........................................................................................................9

N.J.S.A. § 2A:38A-2.....................................................................................................11

N.J.S.A. 2A:38A-3.............................................................................................. 8, 10, 12

## Rules

Fed. R. Civ. P. 9............................................................................................................8

Fed. R. Civ. P. 12......................................................................................................2, 7

## I.    PRELIMINARY STATEMENT

Searchbug pled detailed, non-conclusory facts that plausibly establish each element of its counterclaims under the New Jersey Computer Related Offenses Act ("NJCROA"), for tortious interference, and for civil conspiracy. Far from speculative, the Counterclaims describe a deliberate, technologically sophisticated scheme in which Atlas Data Privacy Corporation ("Atlas") intentionally sidestepped Searchbug's opt-out platform and email, despite Atlas' own successful of Searchbug's preexisting opt-out channels about a year earlier. Despite actual knowledge and prior use of Searchbug's user friendly and near instantaneous redaction protocol, Atlas deliberately targeted its spam attack to the wrong email, overwhelmed Searchbug's computer systems through a coordinated onslaught of tens of thousands of emails all from the same email handle, bypassed known compliance channels, interfered with Searchbug's customer relationships, and inflicted substantial operational and economic harm.

At pleading, Searchbug need not prove its case. It need only allege facts that, taken as true, state a plausible claim for relief. It has done far more than that. The Counterclaims nearly 90 paragraphs provide granular factual allegations describing Atlas' conduct, intent, technical methods, and resulting damages. Atlas' improperly asks this Court to weigh evidence, resolve factual disputes, and credit Atlas'

explanations over Searchbug's—tasks wholly inappropriate on a motion to dismiss. As such, Atlas's Rule 12(b)(6) motion must be denied.

## II.    STATEMENT OF FACTS

### A.    Searchbug's Business Model and Compliance Framework

Searchbug, Inc. ("Searchbug") is a California based data facilitator, investigator of public records that provides business to business telecommunications verification and limited data scrubbing services via interstate computer systems. It does not collect, store, or maintain its own database of personal information; instead, verified customers access third party data through APIs, and Searchbug—when presented with a proper request—can block specified data elements from appearing in customer generated reports. CC[1] ¶¶ 1, 37–38. To protect privacy and prevent abuse, Searchbug screens prospective users, requires registration and verification, and conditions access on agreement to Terms and Conditions that restrict use (including *prohibitions on reselling and on lookups of public officials*) and provide for indemnification. *Id.* ¶¶ 57–58.

### B.    Atlas' Recruitment, Assignments, and Auto Generated Requests

Atlas developed a litigation driven program premised on recent amendments to Daniel's Law allowing for, among other things, the assignment of Daniel's Law

---

[1] "CC" refers to Searchbug's Counterclaims set forth in its Answer, Affirmative Defenses, Counterclaims, and Demand for Jury Trial (Doc. No. 62).

claims to 3rd parties: it recruited nearly 20,000 individuals it claimed were "covered persons" ("Assignors") solicited purported assignments of their claims, offered them a preset list of target companies, and then generated nondisclosure requests itself rather than allowing individuals create and submit requests. *Id.* ¶¶ 13–17. Those mass-produced requests were generic, auto generated emails that lacked individualized information necessary to confirm bona fide authorization, covered person status, or that the information at issue was protected. *Id.* ¶ 15. Atlas did not verify covered person status of Assignors, did not verify that Searchbug possessed or disclosed protected information, and did not inform its Assignors about Searchbug's business model or compliance options. *Id.* ¶¶ 19–21. For example, Atlas failed to advise or ignored that Searchbug screens customers and has several checkpoints including IP address checks, disposable email domains, invalid phone numbers, and other cross checks to help thwart bad actors. *Id.* ¶22. Searchbug is careful about privacy, and not everyone that tries to create an account is authorized to use Searchbug. If information a prospective customer provided doesn't pass Searchbug's screening process, is incomplete, or not validated properly, the account is marked as potential fraud or dropped as unresponsive. *Id.* ¶23.

**C. Searchbug's Existing Opt-Out Channels, Atlas' Deliberate End Run**

Throughout the relevant period, Searchbug maintained an open, user friendly opt-out platform on its website that allowed any individual—covered or not—to

3

block their information (https://www.searchbug.com/contact- us.aspx); it also maintained a dedicated opt-out email address, support@searchbug.zohodesk.com, that automatically created tickets for timely processing and, when required, directed new customers to utilize Searchbug's platform for identity verification. *Id.* ¶¶ 24–25, 28–29. Searchbug's correct contact email address, opt-out request forms, and policies for blocking information from showing up on reports are easily found on numerous channels, including the California Attorney General's website. *Id.* ¶29. Searchbug even has established automated solutions to accommodate bulk opt-out or data removal requests from data removal services and similar organizations, which services typically contact Searchbug directly to submit a large, one-time list or to arrange for ongoing, batch-processing data removal. *Id.* ¶35.

Indeed, <u>Atlas had successfully used Searchbug's proper channels in 2022–2023</u>, and Searchbug processed those requests. *Id.* ¶¶ 25–26. Yet, in January 2024, despite having previously used the correct email and privacy platform for redaction requests, and after gathering a "critical mass" of Assignors, Atlas intentionally ignored these pre-existing protocols and sent its massive spam campaign to a different, defunct address (support@searchbug.com) that did not generate tickets or facilitate compliance. *Id.* ¶ 27. Atlas actively ignored known pre-established, user friendly opt-out platform that would have immediately removed Assignors' data regardless of their status as a Covered Person under Daniel's Law. *Id.* ¶ 28.

4

### D.  The January 2024 High Volume Email Barrage

Between January 6 and January 13, 2024, Atlas transmitted roughly 48,000 near identical emails to Searchbug—approximately 7,000 per day—many of which were duplicative submissions for the same individual (e.g., separate emails per address(es) and per phone number(s)), multiplying volume and purported claim counts. *Id.* ¶¶ 46–50. The messages exhibited markers of automation and bulk sending—identical content, a single sending domain routed through a high-volume relay, and "catch all" sender addresses designed not to bounce—triggering automated security protocols that routed them to spam as unsolicited and potentially dangerous. *Id.* ¶¶ 33–34. Searchbug undertook a complex project, whereby a custom script was created and an automated reply sent back to the same email address confirming the process of blocking the requested records has been completed. Searchbug monitors the auto responses to ensure any replies or updates are also processed. *Id.* ¶38. Searchbug sent reply emails to confirm whether blocked, mass emails were indeed spam and not actual, individual persons. Searchbug's reply emails to "@atlas.com" emails have been marked as delivered, but not a single one has been opened or read, which further evidence that the Atlas emails are catch-all alias emails as suspected, and same are <u>not</u> monitored by actual individuals. *Id.* ¶39.

### E.    Operational Disruption and Mitigation Efforts

Searchbug acted reasonably and in good faith to respond to the email influx upon discovery of same, but Atlas' tactics forced Searchbug to divert substantial resources away from revenue generating activities to mitigate the attack and process same to the extent possible. *Id.* ¶ 40. Because Searchbug does not maintain its own database, it engineered custom scripts to block the specific data points identified, incurring more than 100 developer hours to design, test, and secure that functionality. *Id.* ¶¶ 38, 54. After the Court ordered Atlas to produce lists of Assignors and requests, the lists Atlas provided were non searchable, uneditable, and duplicative—rendering manual processing impracticable (estimated 600–800 person hours) and compelling further engineering to import, encrypt, and block the enumerated data points. *Id.* ¶¶ 44–55.

### F.    Searchbug's Good Faith Outreach, Atlas Refusal to Cooperate

Searchbug repeatedly told Atlas—and through counsel—to use the existing opt-out platform and, to facilitate scale, offered to build an API so Atlas could transmit requests and receive real time confirmations; Searchbug also setup a dedicated "coveredperson@searchbug.com" address. *Id.* ¶¶ 41–43. Atlas ignored those avenues, persisted in emailing the defunct address, and declined to collaborate on an API, confirming that its objective was not streamlined compliance but the manufacture of claims. *Id.* ¶¶ 40, 43, 55.

### G.    Lack of Authorization and Resulting Harm

Atlas is not a Searchbug customer and had no authorization to access Searchbug's systems or platform. *Id.* ¶ 61. Any access could only occur through improper means, including the coordinated computer-based spam campaign described above; Searchbug did not consent to such conduct. *Id.* ¶¶ 62–64, 68–69. Atlas' actions damaged Searchbug's computer and email systems, disrupted its operations and customer relationships, and caused measurable economic loss, including diversion of developers and customer service personnel and business interruption. *Id.* ¶¶ 65–66, 70, 79–81, 87, 90–91.

## III.    LEGAL STANDARD

On a Rule 12(b)(6) motion, the Court accepts well-pled facts as true and draws reasonable inferences in the non-movant's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *New Jersey Carpenters & the Trs. Thereof v. Tishman Const. Corp of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014). Pleadings survive if they state a claim that is plausible and contain facts to "suggest the required elements" or "raise a reasonable expectation that discovery will reveal evidence" supporting the elements. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 55 (2007); *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Courts do not weigh evidence or demand proof at this stage. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

Fraud claims must satisfy *Fed. R. Civ. P.* 9(b) by pleading the who, what, when, where, and how, but courts apply the rule with practicality, permitting allegations based on information uniquely in the other party's possession to be pled on belief. *Gross v. Coloplast Corp.*, 434 F. Supp. 3d 245, 249 (E.D. Pa. 2020); *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989).

## IV.    LEGAL ARGUMENT

### A.    Searchbug Sufficiently Pled a Claim for relief under CROA

To state a claim under CROA, *N.J.S.A.* 2A:38A-3**,** a party must allege: (1) at least one of the statute's purposeful or knowing unauthorized acts, and (2) resulting damage to business or property. *Id*. at (a)-(e); *Fairway Dodge, L.L.C. v. Decker Dodge, Inc.*, 191 N.J. 460, 468 (2007); *P.C. of Yonkers, Inc. v. Celebrations!,* No. 04-4554, 2007 WL 708978, at *8 (D.N.J. Mar. 5, 2007). *N.J.S.A.* 2A:38A-3[2] states:

> A person or enterprise damaged in business or property as a result of ***any of the following actions*** may sue . . . :
>
> a. The purposeful or knowing, and unauthorized altering, damaging, taking ***or*** destruction of any data, database, computer program, computer software ***or*** computer equipment . . . ;

---

[2] Atlas narrowing CROA to "anti-hacking" is incorrect. CROA prohibits actions enumerated five subsections. *See Ferring Pharms. Inc. v. Watson Pharms., Inc.*, No. 2:12-CV-05824 (WJM), 2014 WL 12634303, at *6 (D.N.J. Aug. 4, 2014) (denying dismissal where defendant accessed a restricted webcast by evading password); *Auto. Res. Mgmt. LLC v. Favo*, No. CV 21-2630 (SRC), 2022 WL 1080991, at *3 (D.N.J. Apr. 11, 2022) (CROA prohibited accessing work email post-termination).

b. The purposeful or knowing, and unauthorized altering, damaging, taking ***or*** destroying of a computer, computer system or computer network;

c. The purposeful or knowing, and unauthorized ***accessing or attempt to access*** any computer, computer system or computer network;

d. The purposeful or knowing, and unauthorized altering, accessing, . . . a financial instrument; ***or***

e. The purposeful or knowing accessing and ***reckless*** altering, damaging, destroying ***or*** obtaining of any data, data base, computer, computer program, computer software, computer equipment, computer system or computer network.

[(emphasis added).]

### 1.    *Searchbug Adequately Alleges the First CROA Element*

Atlas acted "purposefully or knowingly" and without authorization and/or recklessly, violating CROA §§ (a)-(c) and (e). Under CROA, "access" includes "instruct[ing], ***communicat[ing] with***, stor[ing] data in, retriev[ing] data from, **or otherwise [using] any resources of a computer, computer system, or computer network**." *N.J.S.A.* 2A:38A-1(a) (emphasis added). Courts recognize "access" includes *communication-based* intrusions. *Atlas Data Corp. v. REIPRO, LLC*, Dkt. No. MRS-L-231-24 (Feb. 21, 2025) (Purcaro Cert., **Exhibit A**).

Here, Atlas engaged in unauthorized communication with Searchbug's systems by transmitting nearly 48,000 spam, auto-generated emails to a defunct Searchbug email right after New Years rather than, and refusing to use, Searchbug's

9

existing opt-out platform and email – of which Atlas was well aware. Such massive spam attack is exactly the type of access intrusion CROA prohibits under §§ 2A:38A-3(a), (b), (c), and (e).

Atlas deliberately flooded Searchbug's computers after spending months collecting ~20,000 Assignors and withholding their purported "requests" until Atlas aggregated a critical mass for its attack. Atlas transmitted ~48,000 auto-generated emails to Searchbug's incorrect email immediately after the New Year. Multiple emails per Assignor with various combinations of multiple addresses and numbers were designed to artificially inflate email volume. Atlas failed and refused to use Searchbug's established opt-out platform, its process for bulk submissions, or even its dedicated coveredperson@searchbug.com email address, and further ignored Searchbug's requests to implement an API to allow Atlas to seamlessly transmit take down requests and receive real-time confirmation of processing, and refused to work with Searchbug in a reasonable business manner. Searchbug plainly describes "purposeful or knowing unauthorized" and indeed "reckless" accessing, taking, altering, or damaging. The attack was timed and designed to damage Searchbug's systems and its actions were aimed at manufacturing bogus claims for Atlas' benefit.

Atlas gained or attempted to gain access by unauthorized or fraudulent means. Atlas is not a customer and has no authorization to access Searchbug's system. Atlas accessed Searchbug's platform or data by fraudulent means (i.e., misrepresentation

10

as a customer and/or using an unauthorized third-party account) and in violation of Searchbug's screening of prospective users, required registration and verification, and conditioning access on agreement to Terms and Conditions that restrict use (including *prohibitions on reselling and on lookups of public officials*) and provide for indemnification    Atlas improperly accessing Searchbug's systems by circumventing Searchbug's terms for access is sufficient to satisfy pleading requirements, particularly when accepted as true.

### 2.    *Searchbug Adequately Alleges the Second CROA Element*

Searchbug sufficiently pleads damage to its business and property. CROA expressly recognizes that "property or services, including the use of computer time" are compensable and that value is measured by fair market value or the cost of generating, obtaining, or storing data. *N.J.S.A.* § 2A:38A-2. Atlas' attack directly disrupted Searchbug's business operations, overwhelmed Searchbug's systems and email, and caused "disruption of use" as a result. These allegations are sufficient to plead damages. Searchbug was forced to address the cyberattack and divert resources to handle and respond to the deluge, forced to create coding and new complex systems for Atlas alone due to its refusal to utilize bulk submission

processes or otherwise available means, and take action to prevent further harm.[3] Such allegations go beyond minimal pleading threshold.

### 3.    *Atlas is Wrong on the Law and the Facts for CROA*

Searchbug alleges concrete damage resulting from Atlas's conduct, including disruption of its email infrastructure, diversion of developer and customer-service resources, and the forced creation of custom technological solutions to mitigate the attack. CC ¶¶ 38, 40, 54, 65–66, 70. Atlas' argument that "emails cannot constitute access" is flatly wrong under and further improperly seeks a legal ruling divorced from the pleaded facts. Courts routinely recognize that intentional flooding or impairment of computer systems constitutes actionable interference at the pleading stage. At minimum, Searchbug's allegations are sufficient to proceed to discovery.

Nearly identical conduct by Atlas, i.e., allegations of a mass-email cyberattack, has been held sufficient to plead business damage. Indeed, it was foreseeable that sending tens of thousands of emails in a compressed timeframe could disable a system, impede operations, and disrupt a company's ability to serve customers – satisfying § 2A:38A-3(e). *See Atlas Data Corp. v. REIPRO, LLC*, Order at 21. The same logic applies here. Atlas overwhelmed Searchbug's system, triggered security measures, diverted resources – clear, cognizable CROA damage.

---

[3] Atlas' conduct caused substantial business disruption, interference, and measurable damages including remediation costs. The attack consumed significant employee time, resources, and caused revenue losses. All cognizable damages.

Atlas further asserts that no "damage" or "taking" was alleged, misstating both CROA's statutory requirements and the nature of the claims. CROA does not impose a damage-to-computer standard – but even if it did, Searchbug alleged same. Further, as detailed above, Searchbug alleged business harm is consistent with the statute. Atlas' suggestion that the emails were "ordinary" is contradicted by the detailed facts pled. Likewise, its claim that no facts show Atlas knew harm was likely ignores not only common-sense damage resulting from Atlas' barrage, but also the actual notice Atlas had of (as it previously used same about a year prior) the correct opt-out process, purposeful evasion of same, and emails alerting Atlas of the spam system blocking – emails Atlas simply ignored (delivered but no opened or read). Searchbug damages it suffered to Atlas' conduct – indeed, same is easily inferred.

Searchbug pled particularized facts of purposeful, unauthorized, and reckless conduct under CROA's broad "access" standard, not mere conclusory assertions.

### B.    Searchbug Sufficiently Pled a Claim for Tortious Interference

The elements for tortious interference are: (1) reasonable expectation of economic benefit or a contract; (2) lost due to malicious interference, and (3) damages as a result. *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 382 (3d Cir. 2016); *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116. N.J. 739, 750–52 (1989); *Fineman v. Armstrong World Indus.*, 980 F.2d 171, 186 (3d Cir. 1992). Searchbug sufficiently alleged facts in support of each element of this claim.

13

### 1.    *Reasonable Expectation of Economic Benefit Plausibly Pled*

"An action for tortious interference with a prospective business relation protects the right to pursue one's business, calling, or occupation, free from undue influence or molestation. Not only does the law protect a party's interest in a contract already made, but it also protects a party's interest in reasonable expectations of economic advantage." *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 305 (2001) (internal cites/quotes omitted). A protectable right must be pled, but identification of specific customers lost is not required at the pleading stage. *Id.*; *see also Heartland Payment Sys., LLC v. Carr*, No. 318CV09764BRMDEA, 2021 WL 302918, at *7 (D.N.J. Jan. 29, 2021) ("[P]laintiff does not need to allege specific prospective customers or contracts to show a reasonable expectation of prospective economic benefit.") (internal quotes omitted). A party need only allege enough facts to show a protective right (a prospective economic or contractual relationship) giving rise to some "reasonable expectation of economic advantage." *Printing Mart.*, 116. N.J. at 751. Prospective economic relationship is defined broadly, including "even the voluntary conferring of commercial benefits in recognition of a moral obligation" or "any other relations leading to potentially profitable contracts." *Fineman*, 980 F.2d at 195 (internal quotes/cites omitted); *see also Printing Mart*, 116 N.J. at 751-753 (reasonable expectation in ongoing/expected sales to the public).

14

Searchbug has ongoing contractual and economic relationships with its customers and prospective customers, it is a data facilitator providing access to information through vetted and contractual terms. It had a reasonable expectation of continuing its relationships and business with current and perspective customers, and to do so free from violation of its privacy practices, terms and conditions. Searchbug sufficiently pled its "right to [its] business, calling, or occupation, free from undue influence or molestation" as required for this element. *Lamorte Burns*, 167 N.J. at 305*; Printing Mart*, 116. N.J. at 751.

### 2.    *Malicious Interference by Atlas is Sufficiently Pled*

"[M]alicious interference—requires only the intentional doing of a wrongful act without justification or excuse." *Avaya Inc.*, 838 F.3d at 383 (internal quotes/cites omitted). "Wrongful conduct [is] always viewed in the specific context . . . . It is conduct that would not be sanctioned by the rules of the game." *Id.* (internal quotes/cites omitted). "Malice is determined on an individualized basis, and the standard is flexible, viewing the defendant's actions in the context of the facts presented." *Industria De Alimentos Zenu S.A.S. v. Latinfood U.S. Corp.*, 679 F. Supp. 3d 53, 111 (D.N.J. 2023) (internal quotes/cites omitted). Here, "malice is not used in the literal sense requiring ill will . . . . Rather, malice is defined to mean that the harm was inflicted intentionally and without justification or excuse." *Dello Russo v. Nagel*, 358 N.J. Super. 254, 269 (App. Div. 2003) (internal quotes/cites omitted).

15

The requisite intent may be "the taking of improper action with knowledge that interference will probably result." *Velop, Inc. v. Kaplan*, 301 N.J. Super. 32, 49 (App. Div. 1997). "The line clearly is drawn at conduct that is fraudulent, dishonest, or illegal and thereby interferes[.]" *Lamorte Burns*, 167 N.J. at 307. Allegations that Atlas "acted out of [its] own self interest to enrich [itself] at the expense of [defendant] . . . are sufficient assertions of intent and malice." *Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 359 (D.N.J. 2019).

Atlas purposefully engaged in a fraudulent scheme to self-profit off Daniel's Law, and at the expense of Covered Persons and Searchbug. Such self-interested conduct, i.e., holding back Assignors requests and launching its attack in a manner designed to frustrate compliance and interfere with Searchbug business, gives rise to an inference of malice. Similarly, Atlas' misrepresentations and deceptive practices, purposeful obstruction and malicious prosecution, violations of the terms of service, sidestepping of dedicated opt-out processes, targeting the wrong email, and inflating volume all support malice inferences.

### 3.    *Resulting Losses is Plausibly Pled*

For "loss and causation, there must be proof that if there had been no interference there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits." *Avaya Inc.,* 838 F.3d at 383. "[I]t is sufficient that plaintiff prove facts which, in themselves or by the inferences

16

. . . drawn therefrom, would support a finding that, except for the tortious interference by the defendant with the plaintiff's business . . . , plaintiff would have consummated the sale and made a profit." *Id.*; *see also Printing Mart*, 116. N.J. 739.

Searchbug pled foreseeable losses caused by Atlas' interference. Atlas' coordinated attack disrupted Searchbug operations, disabled use, overwhelmed systems, and blocked communications. Searchbug forced diversion of resources, disruption of business operations, impairment of ability to serve customers, interruption of interstate commercial activity, and actions to prevent further harm caused business and revenue losses, which would not have occurred but for Atlas' malicious interference. Atlas' contention that its conduct was "justified" or "protected" presents a factual defense inappropriate for resolution on a motion to dismiss.

## C.   Searchbug Sufficiently Pled a Claim for Relief for Civil Conspiracy

"[C]ivil conspiracy[4] is a tort comprised of four elements: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 390 (D.N.J. 2016) (internal quotes/cite omitted).  "[A]

---

[4]  Civil conspiracy claims are evaluated under Rule 8's general pleading standard. *Hillsborough Rare Coins, LLC v. ADT LLC*, No. CV 16-916 (MLC), 2017 WL 1731695, at *12 (D.N.J. May 2, 2017).

plaintiff need not prove that the unlawful agreement was express or that each participant in the conspiracy knew the exact limits of the illegal plan or the identity of all participants, as long as plaintiff alleges that each participant shared in the general conspiratorial objective." *MaxLite, Inc. v. ATG Elecs., Inc.*, No. CV 15-01116, 2024 WL 4764685, at *9 (D.N.J. Nov. 13, 2024) (internal quotes/cite omitted). Direct evidence is also not needed, only that the agreement "could be circumstantially inferred[.]" *Id.* (internal quotes/cite omitted).

Civil conspiracy is not an independent tort; it is grounded in an underlying actionable wrong thereby requiring an overt act, which proximately causes damages. *Farris v. Cnty. of Camden*, 61 F. Supp. 2d 307, 330 (D.N.J. 1999). The focus is the underlying wrong, not the agreement itself. *Ewing v. Cumberland Cnty.*, 152 F. Supp. 3d 269, 301 (D.N.J. 2015). At the pleading stage, the nature of a conspiracy makes it impossible to provide the details. *Philip Morris USA, Inc. v. Lee*, 481 F. Supp. 2d 742, 747 (W.D. Tex. 2006). Moreover, the identity of all co-conspirators is not required as same may be unveiled in discovery so long as the facts give rise to the inference of an agreement. *Freeman v. Giuliani*, No. CV 21-3354 (BAH), 2022 WL 16551323, at *11 (D.D.C. Oct. 31, 2022).

As detailed above, Searchbug alleges that Atlas acted in concert with one or more unknown actors to unlawfully access Searchbug's computer systems, misuse its data, and violate Searchbug's Terms and Conditions. Atlas is not a customer, and

indeed Searchbug's customers are contractually barred from using Searchbug's services or information "to bother, stalk, harass, threaten or embarrass any individual," to look up "government officials" or "public persons," or "resell or broker the Searchbug services to any third party" and must indemnify Searchbug for certain uses and/or violations of these terms. Atlas could not have accessed Searchbug's systems and data alone. Indeed, Atlas could not have launched its tens of thousands of emails blasted at Searchbug alone.  It is easily inferred, particular giving all favorable inferences to Serachbug, that Atlas and at least one other person agreed to commit an unlawful act, i.e., the actions detailed in violation of CROA and tortious interference sections above. They took overt acts, i.e., the spam attack, misrepresentations, obstruction of compliance, unauthorized access, and Searchbug suffered resulting damages. Atlas' motion must be denied.

## V.    __CONCLUSION__

For the reasons set forth herein, Searchbug respectfully requests Atlas' motion to dismiss Searchbug's counterclaims be denied in its entirety.

Dated February 3, 2026                 **GREENSPOON MARDER LLP**
                                       */s/Kelly Purcaro*
                                       Kelly M. Purcaro, Esq.
                                       Kory Ann Ferro, Esq.
                                       One Gateway Center, Suite 2600
                                       Newark, New Jersey 07102
                                       Tel.: (732) 456-8734 or 8746
                                       Kelly.Purcaro@gmlaw.com
                                       KoryAnn.Ferro@gmlaw.com
                                       *Attorneys for Defendant Searchbug*